UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NICHOLAS FULLER,<br><br>Defendant. | Criminal Action No. 23-209-03 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(November 5, 2024)

On June 20, 2024, Defendant Nicholas Fuller ("Defendant" or "Mr. Fuller") entered a plea of guilty to Count One of the Indictment, charging him with Civil Disorder, in violation of 18 U.S.C. §231(a)(3).  *See* Plea Agreement, ECF No. 62.  Mr. Fuller is scheduled for sentencing by this Court on November 8, 2024.

**I. BACKGROUND**

On August 15, 2024, the United States Probation Office for the District of Columbia ("Probation Office") filed its draft Pre-Sentence Report ("PSR"), which calculates Defendant's total offense level as 11, starting from a base level of 10, and then applies a +3-level enhancement for physical contact with law enforcement officers, and a -2-level adjustment for acceptance of responsibility.  With a Criminal History category of I and an offense level of 11, the Guideline range of imprisonment is 8 months to 14 months.  Defendant objected to the PSR, proffering that "Mr. Fuller has no criminal history points and is entitled to application of the zero-point offender guideline as he did not engage in violence."  *See* Defendant's Objection, ECF No. 65.

Effective November 1, 2023, the United States Sentencing Commission created a new guideline provision ("zero-point offender adjustment") to reduce by two-levels the total offense

1

level for defendants without any criminal history points, if they meet certain criteria:

>1. the defendant did not receive any criminal history points from Chapter 4, Part A;
>2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
>3. the defendant did not use violence or credible threats of violence in connection with the offense;
>4. the offense did not result in death or serious bodily injury;
>5. the instant offense of conviction is not a sex offense;
>6. the defendant did not personally cause substantial financial hardship;
>7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
>9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
>10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaging in a continuing criminal enterprise, as defined in 21 U.S.C. §848.

U.S.S.G. §4C1.1(a). This Amendment is commonly referred to as Amendment 821, part B.

Defendant's zero-point offender objection is noted by the Probation Office in its final PSR, with the Probation Office explaining that "[a]ccording to the Statement of Offense, the defendant pushed against the officers' shields with raised left elbow and forearm, before turning and leaning into the shields with his back, in apparent attempt to prevent the forward movement of the officers [and] [t]his conduct appears to pose a threat of violence, in the view of the Probation Office." Final PSR, ECF No. 67, at 36. The Probation Office indicates also that if the Court finds that Defendant meets the criteria for this zero-point offender adjustment, "the total offense level would reduce to 9, resulting in a guidelines imprisonment range of 4 months -10 months[.]" *Id.*

In its Sentencing Memorandum, the Government agrees with the Probation Office calculation and argues against the application of a zero-point offender adjustment pursuant to U.S.S.G. §4C1.1, based on its allegation that "Fuller personally used violence when he forcefully pushed with his body against the line of officers protecting the Capitol building." Govt. Sent. Mem., ECF No. 82, at 13. In contrast, in his Sentencing Memorandum, ECF No. 85, at 26-34,

2

Defendant argues that such adjustment is warranted because "Mr. Fuller did not himself engage in violence or threaten violence." *Id.* at 27. Furthermore, Defendant challenges for the first time the physical contact enhancement, arguing that "a downward variance is appropriate . . . [insofar as] a three-level enhancement overstates Mr. Fuller's culpability, while a one-level variance is warranted because "Mr. Fuller's physical contact was indirect or not injurious[.]" *Id.* at 34-35. Both the zero-point offender adjustment and the physical contact enhancement are addressed herein.

## II. ANALYSIS

### A.  Zero-Point Offender Adjustment

In this case, there is no dispute that Mr. Fuller has no criminal history points, but the Government disputes whether Defendant satisfies the criterion that he "did not use violence or credible threats of violence in connection with the offense." §4C1.1(a)(3).[1] "In interpreting [the terms used in] the Sentencing Guidelines, the Court applies the ordinary tools of statutory interpretation and looks to the plain meaning of its terms." *United States v. Seefried*, 639 F. Supp. 3d 8, 10 (D.D.C. 2022) (string cite omitted). Plain meaning may be discerned by looking at the Guidelines' own definitions, if applicable. The Court notes that the Sentencing Guidelines Manual itself does not define the term "use violence or credible threats of violence" within Section 4C1.1 or the commentary.

When no definitions are provided, the court may rely on dictionary definitions to determine meaning. *Kaufman v. Nielsen*, 896 F.3d 475, 485-87 (D.C. Cir. 2018). Finally, courts may look

---

[1] The Government notes that the Plea Agreement preserved its right to oppose application of the criteria for an adjustment under this section, including that Defendant "used violence or credible threats of violence in connection with the offense." Govt. Sent. Mem., ECF No. 82, at 13 n.6; *see* Plea Agrmt., ECF No. 62, at ¶5(C).

also to precedent to see how other courts have interpreted similar words and phrases. *Seefried*, 639 F. Supp. 3d at 10. Courts from this district have issued opinions discussing the dictionary definitions of violence in the context of application of Section 4C1.1, namely that violence is: "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse." *United States v. Bauer*, 714 F. Supp. 3d 1, 5 (D.D.C. 2024) (internal citations omitted); *United States v. Yang*, Criminal Action No. 23-284 (JDB), 2024 WL 519962 (D.D.C. Feb. 9, 2024), at *4 (similar); *United States v. Hernandez*, Criminal Action No. 21-445 (CKK), ECF No 65, at 5 (D.D.C. Jan. 11, 2024) (similar).[2]

Furthermore, courts from this district have indicated that the appropriate inquiry regarding "use of violence or credible threats," involves looking at Defendant's own conduct on January 6, 2021. For example, in *Yang*, 2024 WL 519962, at *4, the Honorable John D. Bates rejected the government's violence-by-presence theory of §4C1.1(a)(3) after finding that the "inquiry turns on the actions of the defendant himself or herself, not the actions of others," and Judge Bates "join[ed] the view of at least six other judges in this District." [3] *Id.* at *5. In that case, after reviewing the video exhibits submitted by the Government, Judge Bates found that:

> Even assuming Yang applied "physical force" insofar as he briefly made physical contact with two officers, the Court finds that the contact was not made with an intent to harm. See, e.g., Pineda-Duarte, 933 F.3d at 523. Nor was this contact accompanied by "fury, vehemence, or outrage," or the like. The throughline of the definitions of "violence" is a degree of aggressiveness that is not present in this case. True, Yang is near the front of the crowd, opposing the line of officers. Yet his body language is overtly nonconfrontational, with his hands raised in the air. The two instances in which he made physical contact with officers were brief and reactive. And in the latter instance, he briefly grabbed a baton while

---

[2] In *Bauer*, Judge McFadden found that the defendant "used violence and made credible threats of violence in connection with the offense," and was therefore ineligible for a two-point adjustment pursuant to U.S.S.G. § 4C1.1. *Bauer*, 714 F. Supp. 3d, at 3.

[3] Defendant notes that two additional judges may be added to that list. Def.'s Sent. Mem., ECF No. 85, at 28 (citations omitted).

trying to pull another rioter back away from the police. Viewing the evidence as a whole, the Court concludes that Yang did not act with the degree of aggression necessary to fairly characterize his actions as "violence."

*Yang*, 2024 WL 519962, at *4.

The Court "cannot simply impute the "use of violence" to a defendant based on the action of others," *Bauer*, 714 F. Supp. 3d at 7. This proposition is accepted by the parties in the instant case, as both rely on Mr. Fuller's own actions to support their arguments. *See generally* Govt. Sent. Mem., ECF No. 82, at 2-10; Def.'s Sent. Mem., ECF No. 85, at 10-26. The Government proffers that "[w]ith his back and later his forearm, Fuller pressed against Officer J.M.'s riot shield jostling with the police officer for approximately twenty seconds," Govt. Sent. Mem., ECF No. 82, at 6, and "he pushed against the officers' shields with his raised left elbow and forearm, before turning and leaning into the shields with his back, in an apparent attempt to prevent the forward movement of the officers." *Id.* at 8-9.

Defendant admits that at some point, "Mr. Fuller made the foolish decision to stand at the front line of officers, and later resisted when officers began clearing the terrace" but explains that "when Mr. Fuller approached the line, he did not do so aggressively" and he "had no intention of pushing or breaching the line[.]" Def.'s Sent. Mem., ECF No. 85, at 17. Defendant proffers also that Mr. Fuller's back and forth interaction with Officer J.M. was "non-aggressive and non-threatening" as Defendant had been "chatting with and smiling at Officer J.M. when he put his hands on the shield." Def.'s Sent. Mem., ECF No. 85, at 18. Defendant contends that his "demeanor was peaceful and friendly" and at some point, "Mr. Fuller took a selfie with Officer J.M." *Id.* at 19. Defendant admits however that he "resisted [police] efforts to clear the area" and by doing so, "he impeded law enforcement during a civil disorder." *Id.* at 21. According to Defendant, "[w]hen [he] realized that the officers were getting ready to push, he kneeled down on

5

the ground which obstructed their ability to clear the area." *Id.* Then, moments before the officers pushed forward, Mr. Fuller, "turned his body to the side" while still on his knees. *Id.* Mr. Fuller states that he remained in this position with arm and elbow raised, while police moved forward, and he admits that he made contact with the officers and leaned his body against them while they pushed. *Id.* at 22. Defendant submits however that "[w]hile resisting the push, Mr. Fuller never put his hands on officers"; instead, "his hands were on other protestors." *Id.*

As a preliminary matter, the Court notes that the insurrection was certainly violent, but as previously noted, it is not the violence of others or general crowd violence that is the focus of this Court's inquiry.[4] Rather, this Court considers Mr. Fuller's own conduct to determine whether he satisfies the criterion of not using violence or credible threats of violence. This Court has reviewed the video evidence provided by the Government, with a focus on the evidence highlighted by both the Government and Defendant. The Court has examined Mr. Fuller's actions and his demeanor, in the context of the litany of cases from this district that have addressed this zero-offender issue. As such, the Court finds that while Mr. Fuller did have physical contact with the officers, Mr. Fuller did not use violence or credible threats of violence that would preclude application of the zero-point offender provision, and accordingly, he is entitled to the benefit of that adjustment.

### B. Physical Enhancement

The Court turns now to Defendant's argument that the 3-level physical enhancement overstates Mr. Fuller's culpability. Section 2A2.4(b)(1) of the Sentencing Guidelines [Obstructing or Impeding Officers] provides that "If (A) the offense involved physical contact; or (B) a

---

[4] *See United States v. Stewart Parks*, Criminal Case No. 21-411 (APM), Sentencing Transcript, ECF No. 125, at 38-39 (Nov. 15, 2023) (where the Honorable Amit Mehta applied Section 4C1.1 to a defendant whom the Government alleged was close to rioters who overran a group of officers, "notwithstanding [acknowledgment of] conduct that clearly contributed to the chaos and the mayhem of the day and did so in a significant way").

dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels." U.S.S.G. §2A2.4(b)(1). In this case, there is no dispute that Mr. Fuller made physical contact with law enforcement officers. Furthermore, in the Plea Agreement, the parties agreed that this Guidelines provision applied. *See* Plea Agrmt., ECF No. 82, at ¶5A. Moreover, as previously noted, this argument was not raised by Defendant as an objection to the draft PSR, and accordingly, it was not addressed by the Government.

Defendant is correct that "physical contact" pursuant to this Section 2A2.4 (b)(1)(A) can "encompass a wide range of conduct," and that it appears no federal court has defined this term for purposes of this section. In support of his argument that this enhancement overstates Mr. Fuller's culpability, Defendant points to a Seventh Circuit case explaining that the meaning of "physical contact" can "be derived by examining the law of battery," *United States v. Taliaferro*, 211 F.3d 412, 415-16 (7th Cir. 2000), where battery is "intentional and wrongful physical contact with a person."[5] Defendant highlights also several cases from other Circuits where the enhancement was applied in contexts "in which the defendant's contact with a victim was more aggravated than Mr. Fuller's." Def.'s Sent. Mem., ECF No. 85, at 35. This argument is unpersuasive as Defendant does not cite any authority for the proposition that the enhancement should be varied downward depending on the amount, type, and/or intent underlying the physical contact. In this case, while the Court has found that Mr. Fuller did not use violence or the credible threat of violence, which permits him the benefit of the zero-offender provision, there is no question that Defendant engaged in physical contact with the law enforcement officers, which was

---

[5] That case involved a defendant who assaulted a prison guard by throwing a cup of urine into his face, where the "assault carrie[d] a base offense level of six, and if that "conduct involved physical contact," a three-level upward adjustment." *Taliaferro*, 211 F.3d at 413. The defendant challenged the three-level upward adjustment, which was upheld by the Circuit Court.

intentional and occurred on more than one occasion due to Defendant's own actions, and which obstructed or impeded those officers. Accordingly, the Court finds no good reason to alter this 3-level enhancement.

Upon review of the Sentencing Memoranda, the relevant legal authorities, and the record in this case, and for the reasons set forth herein, it is accordingly, it is this 5th day of November 2024,

ORDERED that Defendant's request for application of the 2-level zero-point offender adjustment is GRANTED, and it is hereby further

ORDERED that Defendant's request for a downward variance of the 3-level physical contact enhancement is DENIED.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE